# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-0351V

| | |
|---|---|
| MARTINA LARSON, as trustee for the heirs of RENATO C. BARROZO,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: November 13, 2023 |

*Timothy James Lessman, Knutson & Casey Law Firm, Mankato, MN, for Petitioner.*

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On March 27, 2020, Renato Barrozo filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. After Mr. Barrozo sadly passed away, Martina Larson, as trustee for the heirs of Mr. Barrozo, was substituted as Petitioner. ECF No. 35. Petitioner alleged that Mr. Barrozo suffered Guillain-Barré syndrome ("GBS") which was caused-in-fact by the influenza vaccine he received on October 5, 2018. Petition at 1, ¶ 16. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

On November 10, 2021, I issued a ruling on entitlement in Petitioner's favor. After the parties encountered difficulty ascertaining the appropriate amount of Medicaid payments made on behalf of Mr. Bazzoro for treatment related to his GBS illness, they set forth their agreed-upon assessment of the issue in briefing and requested a more detailed decision addressing the matter.

For the reasons set forth below, and incorporating the agreement of the parties on some issues,[3] I find that Petitioner is entitled to an award of damages in the amount **$216,930.91,** including $172,500.00 for past pain and suffering and $44,430.91 for reimbursement to the estate of Mr. Barrozo of the settlement amount for all vaccine-related Medicaid expenses paid by the State of Minnesota.

## I.     Relevant Medical History

On October 5, 2018, Mr. Barrozo (60 years old) received the flu vaccine alleged as causal. Exhibit ("Ex.") 3 at 6, ECF No. 6-3. Approximately one month later, around November 5, 2018, he began experiencing neuropathy in his hands, feet, and tongue. Ex. 12 at 595-596, ECF No. 26-2 (oncology appointment on November 12, 2018).[4] The next day, Mr. Barrozo visited the emergency room, complaining of worsening neuropathy in his hands, feet, lower legs, and tongue, causing an inability to eat or walk. Ex. 4B[5] at 48-49, ECF No. 6-5. In early December 2018, while still hospitalized but living at a transitional care unit called The Villa, he was diagnosed with GBS and began IVIG therapy after returning to the main hospital building. *Id.* at 168, 196 (diagnosis confirmed). He was discharged to an inpatient rehabilitation facility on December 5, 2018. *Id.* at 209-12.

Although still requiring a wheelchair, Mr. Barrozo made progress while at this facility. Ex. 6. On December 28, 2018, he was discharged to a transitional care unit (Allina Courage Kennedy Rehabilitation Institute), where he remained until late March 2019. *Id.*

---

[3] Although Respondent initially represented that the agreed-upon amount for Mr. Barrozo's pain and suffering was $175,000.00, during email communications Respondent's counsel confirmed the correct amount was that cited by Petitioner in her brief, $172,500.00. *See* Informal Remark, dated Nov. 8, 2023; *Compare* Petitioner's Informal Brief ("Brief") at 3, ECF No. 56 *with* Respondent's Damages Brief ("Response") at 1, 8, ECF No. 61.
.

[4] Due to the symptoms which he was experiencing, Mr. Barrozo rescheduled a follow-up appointment with his oncologist to one week earlier. Ex. 12 at 596. He was diagnosed with Burkitt lymphoma in 2016. *Id.* at 595.

[5] Petitioner labeled Exhibit 4 as parts 4A and 4 B. Because he began with page 1 again for Exhibit 4B, it is necessary to reference the subpart being cited.

at 9; *see* Ex. 7[6] (transitional care unit records). By early March, he was able to walk from the DMV parking lot, stand in line, and renew his driver's license. Ex. 7 at 701.

After returning home, Mr. Barrozo continued with his outpatient therapy. *See* Ex. 8. By June 2019, his strength was improving, but he continued to experience neuropathic pain. Ex. 4B at 236. At a wellness appointment in early October 2019, Mr. Barrozo reported experiencing some unsteadiness and needing a cane to walk. Ex. 10 at 30. He continued to experience some numbness and tingling in his hands and feet which was partially controlled with medication. *Id.* at 32. At a follow-up oncology appointment in late September 2020, it was noted that Mr. Barrozo had made a good recovery but still required medication to treat his neuropathy. *Id.* at 138.

On April 19, 2021, Mr. Barrozo passed away from unrelated causes. His death certificate listed the immediate cause of death as acute respiratory failure with underlying conditions of atrial fibrillation and a suspected massive stroke. Ex. 13. Burkitt lymphoma is listed as a contributing condition. *Id.*

## II.    Appropriate Medicaid Lien Amount

After working diligently for several months to obtain the final Medicaid lien information,[7] the parties discovered the matter was further complicated by the involvement of two agencies who both appeared to be asserting a Medicaid lien related to Petitioner's medical expenses. *See* Status Report, filed June 3, 2022, ECF No. 45. Over the subsequent seven months, they worked diligently to obtain itemized payment records from both agencies, HealthPartners and Hennepin County Human Services (Estate Recovery Unit). *See* Status Reports, ECF Nos. 46-54 (multiple status reports and a request for subpoena authority).

On March 1, 2023, a telephonic status conference was held to discuss the matter. *See* Order, issued Mar. 3, 2023, ECF No. 55. Having agreed upon all types of compensation, the parties explained that they wished to ensure that the decision in this case would clearly state the amount designated for the satisfaction of the Medicaid lien so the issue could be more easily addressed if one of the agencies later sought further payment. It was agreed that the parties would fully set forth all related information in briefing. *Id.*

---

[6] Although Petitioner labeled Exhibit 7 parts 7a through 7h, he used consecutive page numbers for the entire exhibit. Therefore, it is not necessary to refer to the individual subpart when citing this exhibit.

[7] *See,* e.g. Status Report, filed May 3, 2022, ECF No. 44.

The parties agreed that after Mr. Barrozo passed away, Hennepin County Human Services Department asserted a Medicaid lien against Mr. Barrozo's estate in the amount of $44,430.91. Petitioner's Informal Brief ("Brief") at 2; Respondent's Damages Brief ("Response") at 3-4. The lien was paid in full by the estate from the proceeds of the sale of Mr. Barrozo's house. Brief at 2. On April 27, 2023, Petitioner provided copies of the documents asserting the Medicaid lien (dated August 29, 2021) and certifying that the $44,430.91 paid by Mr. Barrozo's estate satisfied all claims by Hennepin County Human Services Department (dated October 26, 2021). ECF Nos. 58-6, 58-7.

At some point prior to May 2022, a representative of HealthPartners asserted a similar Medicaid lien. Brief at 2; Response at 4. During communications with the HealthPartners representative, the parties emphasized that most payments listed by both entities were for the same treatment period and to the same medical facilities and providers. Exs. A-B, ECF No. 62-1, 62-2 (May and June 2022 emails); Brief at 2; Response at 4-5. In response, the Health Partners representative stated that the payments had been made and that he had spoken to the Hennepin County Human Services Department representative who indicated that, after a quick review, she believed the payments were different. *Id.* However, the HealthPartners representative provided no documentation to support this assertion. Brief at 2. And the parties believe the Hennepin representative was looking at incorrect information when she offered this opinion. *Id.*

Over the subsequent several month period, the parties worked diligently to ascertain the appropriate amount of any remaining Medicaid lien. *See* Status Reports, ECF Nos. 45-48. In early October 2022, Petitioner was granted subpoena authority to obtain a detailed list of expenditures from Hennepin County which could be compared to what she had received from HealthPartners. ECF Nos. 49-50.

After serving the subpoena, the Hennepin County Attorney's office informed Petitioner that they did not have any documentation beyond the Claims Payment History already provided. ECF No. 60-1 at 1 (email on October 19, 2022); Brief at 2; Response at 5. Thus, it was unclear what documentation the Hennepin County Human Services Department representative was consulting when she indicated the charges were different. The Hennepin County Attorney's office also explained that Minnesota counties administer the Title XIX program and are responsible for seeking recoupment of any paid amounts from a decedent's estate. *Id.*

Petitioner made one last effort to obtain an itemized list of all Medicaid amounts paid for Mr. Barrozo's care from Minnesota Department of Human Services. Brief at 2; Response at 6. In response, she received a statement from a representative from the Tort Unit, Benefit Recovery, apologizing for an earlier assertion that additional amounts were owed, and stating that the matter had been settled via the settlement paid by Mr.

Barrozo's estate, the case was closed, and the Department no longer had an interest in the matter. ECF No. 60-1 at 2-4.

In a letter dated December 1, 2022, Petitioner provided a thorough account of her subsequent communications with Hennepin County Attorney's office and Minnesota Department of Human Services, including her supposition that the earlier representation the Health Partner received must have been an error. ECF No. 58-1; Brief at 2-3; Response at 6. To date, Petitioner has received no response from the HealthPartners representative.

Thus, it appears the matter has been resolved, there is no further Medicaid lien owed by Petitioner, and Petitioner is entitled to reimbursement of the $44,430.91 previously paid to Hennepin County to settle the matter. Per the parties' agreement and my review of the relevant documentation, I find $44,430.91 to be the appropriate amount to be awarded for all Medicaid lien payments.

### Conclusion

Pursuant to the terms stated in the attached Proffer, **I award Petitioner a lump sum payment of $216,930.91, representing compensation in the amount of $172,500.00 for actual pain and suffering and $44,430.91 for reimbursement to the estate of Mr. Barrozo of the settlement amount for all vaccine-related Medicaid expenses, in the form of a check payable to Petitioner, Martina Larson, as trustee for the heirs of Renato C. Barrozo.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**<u>s/Brian H. Corcoran</u>**
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.